## CIRCUIT COURT OF THE CITY OF LYNCHBURG

Cassie C. Phelps

v.

Daniel E. Watts

v.

U. S. Fire Insurance Co.

November 13, 1975

By JUDGE WILLIAM W. SWEENEY

There has been a hearing on the pleadings in this case and authorities have been submitted by counsel. The issue raised on demurrer by counsel for Daniel E. Watts is whether an uninsured motorist insurance carrier has standing under the Virginia Third Party Practice Rule and the Virginia Uninsured Motorist Statute to bring in a defendant's liability insurance carrier where there is a coverage question and the uninsured carrier has a contingent risk of paying any judgment. After reviewing the authorities, I feel that it does have such right for the reasons hereinafter given and on such issue overrule the demurrer and the objections to interrogatories.

Counsel for plaintiff, Cassie C. Phelps, filed personal injury actions in this court against Daniel E. Watts and Lawrence M. Scott, t/a Allied Cab as the result of an accident of July 3, 1974, between the cab in which plaintiff was riding and Watts's automobile. This case is now set for trial on the merits in the

Lynchburg Circuit Court for February 3, 1976, the two actions having been consolidated.

At the last docket call, counsel for plaintiff stated in open court that he wanted the coverage question decided before the case was tried on the merits. This, I think, is important, since it bears on this court's exercise of discretion under the Virginia Third Party Practice Rule.

There is, in fact, a coverage question between Watts and his liability carrier, U. S. Fire Insurance Company. No counsel deny this although U. S. Fire has filed responsive pleadings for Watts. The coverage issue is now set for trial in this court for November 25, 1975. Following a determination of such issue, it will be known which carrier will defend and pay any judgment rendered at the later trial. By separating the coverage trial and the trial on the merits, the prejudicial effect of injecting insurance into the personal injury action is thereby avoided.

The position of counsel for Watts and his carrier is, in effect, that Liberty Mutual is not a party to this action and stands in the position of a stranger to it and therefore has no standing to bring in the other carrier under Rule 3:10 which became effective March 1, 1972. In 1968, the uninsured motorist statute, Section 38.1-381, was amended to give additional rights and standing to an uninsured carrier who pays a claim by specifically giving such carrier the right of subrogation against the uninsured motorist's liability carrier as well as against the uninsured motorist.

The position of counsel for Liberty Mutual is that it is not a stranger to the case; that it was brought into the proceeding by plaintiff's counsel who had it served; that it has the right under Virginia law to file pleadings both in its own name and in the name of Daniel E. Watts; that it has filed in both names; and that it should have the right to defend Watts on February 3, 1975, and negotiate settlement if it is determined before hand that Watt's own carrier does not have coverage. Viewing the case in this

light, Liberty Mutual is certainly not a stranger to the action by Phelps even though it is not a party in the strict sense. Certainly, if it ends up having to pay any judgment rendered, the argument that it is a stranger to the action would be hollow consolation.

I realize, of course, that our Supreme Court has ruled that the uninsured motorist carrier is not a party to the action as such. Its liability is contingent not primary. To give it the status of a "party" would be unwisely to allow the injection of "insurance" into bodily injury lawsuits. The post 1972 cases of Travelers v. Labello and Nationwide v. Finley, cited by counsel for U. S. Fire, are really not in point here. We have no issue of injecting insurance coverage into the case on its merits, nor does the holding that an uninsured motorist insurer have to pay interest on a judgement even though not a party weaken the ruling herein. In fact, it seems to be supportive of such ruling as recognizing the dollars and cents involvement of the behind-the-scenes insurance company which must satisfy any unpaid judgment. "Checkbook involvement" is total involvement and removes the "stranger" status. To rule otherwise would be to ignore reality.

Section 38.1-381(e1) gives the uninsured carrier ". . . the right to file pleadings and take other action allowable by law in the name of the owner or operator of the uninsured motor vehicle or in its own name. . ." When it brings in the defendant's own carrier under Rule 3:10, it is "taking other action allowable by law" in his name. Even if Liberty Mutual were not considered a "defending party" for purposes of Rule 3:10, since it has the express right under 38.1-381 to file pleadings in the name of the named defendant, Daniel E. Watts, it should have a right to stand in his shoes for purposes of bringing his liability carrier into the case when such carrier is defending on a reservation of rights.

Turning now to the wording and intent of Rule 3:10, we have no interpretations as yet in the Virginia Supreme Court. However, in this case, I can see no possible prejudice resulting to U. S. Fire by allowing

the coverage issue to be determined first. To require Liberty Mutual to file a separate suit against U. S. Fire would be an exercise in legalistic semantics and, in fact, would be counter productive to the reason and logic behind third party practice.

The Rule is broad enough to accommodate the factual issues here presented. Neither Rule 3:10 nor 38.1-381 proscribe the right of an uninsured motorist carrier to take advantage of the provisions of the Rule. While it is true that 3:10 speaks of the rights of "third-party defendants" and that Liberty is not a defendant in the strict sense of the word, the Rule does provide that such defendant ". . . may proceed under this Rule against any person not a party to the action who is or may be liable to him for all or part of the claim made · in the action against the third-party defendant . . ." (emphasis added). Under 38.1-381(e1) service of process is required against the uninsured motorist carrier ". . . in the manner prescribed by law, as though such insurance company were a party defendant. . ." (emphasis added).

From the wording of the Rule and the statute, it appears that while the uninsured motorist carrier is not a party defendant for some purposes it is treated as such for other purposes, and that a liberal interpretation of the third party practice rule in Virginia would permit it being treated as a party defendant for purposes of bringing in other insurance companies as well as for purposes of service of process. Under such circumstances, the discretion vested in the Court under 3:10 would protect against prejudicial results.

Since Virginia's Third Party Practice Rule is patterned after Federal Rule 14, both of which use the terms "defending party", the Federal Courts' interpretations of the Federal Third Party Practice Rule are highly important. Almost uniformly, the Federal Courts permit a third-party claim against the defendant's insurance carrier when such carrier denies coverage See Rosalis v. Universal Distributors, 21 F.R.D. 169 (1957). See also, Federal Practice and Procedure, Vol. 6, Sec. 1449, Wright & Miller. In Colton v. Swain

v. <u>Pacific</u> <u>Indemnity</u>, 358 F.Supp. 859 (Ill. 1973), the Court stated:

> The object of Rule 14 is to facilitate litigation, to save costs, to bring all the litigants into one proceeding, and to dispose of an entire matter without the expense and labor of many suits and many trials. 358 F.Supp. at 862.

The Federal Third Party Practice Rule encourages settlements and should be liberally construed. <u>Southern Railway</u> v. <u>Fox</u>, 339 F.2d 560 (5th Cir. 1964); <u>Powell</u> v. <u>Kull</u>, 53 F.R.D. 380 (D.C.Pa. 1971).

For reasons stated, the demurrer and objections to interrogatories are overruled.